Havens v. James 2664. Mr. Olp. Good morning, Your Honors. My name is Tom Olp, and I represent the Plaintiff Appellant with Jim Havens, with my co-counsel John Rufferman. An issue in this case is whether Jim Havens and his group were not parties to the Arcara Injunction litigation almost 20 years ago and had no connections to it, are nevertheless bound by the injunction entered there. They are not. Rule 65d-2 of the Federal Rules of Civil Procedure controls this question, providing that an injunction binds, A, the parties, B, anyone legally identified with the party, such as agents or principals, and C, anyone who works in active concert or participation with the party, to assist the party to violate the injunction. Judge Hand, in Alamite Manufacturing back in 1930, tied acting in concert with aiding and abetting a party's violation because he recognized that an injunction, unlike legislation, binds only parties, and that non-parties can be bound consistent with due process only if they are legally identified with parties or help parties, that is, aid or abet them to violate the injunction. If a non-party is acting independently of the parties, the non-party is not aiding and abetting and is not bound by the injunction. So the question here is whether the complaint, taking all well-pledged facts as true and drawing all reasonable inferences in the plaintiff's favor rather than adversity to them, states a claim that Jim Havens and his group are not in any one of these three categories under Rule 65, D2, and for that reason, are entitled to abide a First Amendment to sidewalk council at Rochester Planned Parenthood on the public sidewalk without adhering to the 15-foot buffer zone that constrains the parties to the injunction, and without the state and the city threatening to arrest them for sidewalk counseling. The injunction, number one, they're not parties. Number two, Havens came to the scene to sidewalk counsel at PPR 20 years after the events giving rise to the Arcara injunction. He was unaware of the injunction when he first started sidewalk counseling at PPR. The complaint does not assert that any party induced Havens to start sidewalk counseling and emphasizes that it was Havens who initiated peaceful witnessing, counseling, and prayer outside PPR. Mr. Olt? And that... Yes, sir. Mr. Olt, this is Judge Lillie. I just have one question. Have we required pursuant to Rule 65 that the parties have been induced? As I understand it, what we've required is just a participation that helps the enjoined party. We've not required a showing or an allegation of inducement. The court's opinion, the alibi, Judge Havens specifically states, and this court has asserted this, that there has to be evidence of aiding and abetting. Inducement goes from the party to the non-party, but the non-party has to agree or act in response to the inducement before any violation occurs. If the non-party is acting independently, there's no violation because there's no aiding and abetting. Well, no, no, no. But I guess my question is, if there is active aiding and abetting without inducement, would that not be a violation of the injunction? Sure. Absolutely would be. We agree with that. And the question is, in this complaint, is there an allegation that there was no aiding and abetting? And our basic point is that the complaint says that Jim Havens and his group initiated their civil counsel independently of the parties, and that they had a right to do that under the First Amendment, and that they continued to do that. They continued to act independently and never ceased their independent action and started working for- other parties who were subject to the injunction. So the fact that he does the trainings at this institution that's run by Mary Jo's. Well, I have an analogy that could be helpful here. I intend to go voting on Election Day, November 3rd, and my neighbor intends to go voting. We have a common goal to go voting. Does that mean I'm going to vote for my neighbor? Of course not. Suppose I offer to give my neighbor a ride, and he buys me a cup of coffee, and we discuss politics, and he says, why don't you vote for candidate X? And we go and vote. Does that mean- that's coordination of activities according to the lower court. Does that mean I'm voting for my neighbor? Of course not. The lower court's analysis is completely flawed because- Someone who's subject to the injunction can, in fact, support somebody in activities that they cross the line to make the other person subject to the injunction. What would cross the line is some kind of evidence of an agreement that we're not acting on our own. We're not engaging in our own independent First Amendment activities, but we're just there because we've been induced by the parties. We've taken pity on them. We agree with them, but there's got to be evidence that shows that we're doing it for them. There's no such evidence. There was something in the record where Mr. Havens had said, oh, poor Mary Jost. I wish she could go and do sidewalk counseling. I'll go do it on her behalf. Or if Mary Jost had said to Mr. Havens, I wish you would go do this because I can't do it. That would be- that's the kind of evidence you think we would need to see. Correct. That's correct. An example of that is the Claiborne Hardwood case. Please listen to make sure that you can hear when there's a question. If there's a question, I would urge you to stop and listen. Yeah, excuse me. I was going to ask, so what do you take- how do you take the cases where we've said that Rule 65 is about the actuality of the active concert and not the motivations for it? Are you talking about motivations when you talk about- No. Wanting to do it for somebody else? No. Motivation, we agree, is not important. If I do something because I'm a Cubs fan and I do the same thing because I'm a Sox fan, that's my motivation and it's irrelevant. But Judge Hands basically did say, hey, it's got to be a knowing violation. It can't be inadvertent. And furthermore, in this case, the city of Rochester, and you'll see this if you look at Exhibit 1 to the Havens Declaration, the city has threatened criminal contempt, arrest and criminal contempt. You're saying essentially that it would be irrelevant whether Mr. Havens was helping Mary Joost out of pity for her or out of agreement with her cause, but you would still need to show that he was doing something on her behalf or to assist her. Correct. That would work. That's exactly it. This is Judge Giardini. Mr. Rowe, can I ask you a couple of questions? You certainly may. And the first one, I think, is relatively straightforward. And the state seems to be arguing that there's a logical analysis to be followed to determine whether Mr. Havens violated the injunction. And the first premise is that Mary Joost or someone else bound by the injunction as a principal violated it, step number one. And number two is that your client, Mr. Havens, aided and abetted her. So let me just start, number one, and again, this is their argument, I think. So let me take step number one. Do you agree or disagree with the proposition that there's been a showing that Jost violated the injunction? And I understand there's two different procedural postures. One is for the complaint. And the second would be based on the expanded record that the court was considering in connection with the preliminary injunction. So what's your answer to that about whether, in your view, there's been a showing in either situation that Jost violated the injunction? I would respond as follows. Jost, you know, she was a party, or is a party, and has been joined. And so she cannot, you know, she cannot, you know, induce them to violate the injunction on her behalf. Did she do so? I would say no. If, for example, she gave a bottle of water to one of the tribal counselors, would that indicate that they were doing anything for her? What about them using her conference room for training? Does that indicate that there's some kind of quid pro quo that's not alleged in the complaint? And she, and they say, you know, paragraph 43 says, oh, I'm sorry. But you don't dispute that she is a primary violator? As subject to these? Yeah, she's definitely a party to the ACARA injunction. Okay. But you take the, I'm sorry, Judge Lillie, were you following up? Go ahead. Go ahead. So I guess, just to confirm then, you agree that Mary Jost is covered by the injunction, but you take the position that based on the allegations in the complaint, there's been no adequate allegation where your complaint can't be read as alleging that she violated the injunction by, as the statement said, aiding and abetting your client to cross the yellow line, so to speak. Is that right? That's right. We, not only did she not, in our view, induce them or aid them, and in response we aided and abetted her, but there's no evidence that we, you know, did anything in response to what she wanted us to do. Okay. One other point, if I could just make one point, the AG is making this argument, but have they ever, have they ever gone after Jost for violating the injunction? No. Yeah, but that's sort of neither here nor there, right? I mean, that's trying to make, stop them from making an argument that they're making now, but I mean, let me, let me turn to a separate question if I could, and it's about what is the meaning of in concert, an act of concert with, which is in rule 65 and also appears in the injunction, and my question is this, to what extent is acting in limited to aiding and abetting, which is a distinct legal concept that presupposes a principle and an aiding and abetter who is not the principle, and how much would it also include what we consider to be conspiracy, where people are effectively becoming mutual agents for one another? Is it your view that under Alamite, active concert is limited to aiding and abetting, which presupposes a principle, or could there also be a situation where there is a conspirator or a conspiracy relationship? I think there, it would cover a conspiracy. The conspiracy would have to be, though, to help the party get around the injunction. It couldn't be independent conduct by an independent actor. Well, hang on a second, because I think now we're crossing two concepts, right? When you say that it's independent conduct by another actor, now you're just supposing yourself out of a conspiracy relationship. A conspiracy relationship is where two parties agree on a mutual, to pursue a mutual objective, right? So, again, hypothetically, let's assume that we're in a conspiracy world, so where they have agreed on a common objective, and maybe one person couldn't be liable as a principal, but that they jointly undertake activity, where in combination they're achieving whatever the goal is, where here it's stepping over the yellow line. Are you saying that a conspiracy relationship, which would not rise to the level of aiding and abetting, would nevertheless be in violation of the injunction? I wouldn't say that. That's not what Judge Hand said in Alamite. He used the term aiding and abetting. So you're taking the view that we have to read Alamite as saying an aiding and abetting relationship can get you in violation of an injunction, but a conspiratorial relationship is not. Well, if by conspiracy you mean, you know, any kind of interactions between the parties where there's a general mutual goal of pro-life speech, then I would disagree with that. No, I'm not talking about pro-life speech. I'm talking about an agreement where one person will undertake an object. And, you know, usually somebody's going to go in and rob the bank, right? But here it's not. Here it's, no, someone's going to cross the yellow line, right? And we're going to agree with each other that one of us is going to go across the yellow line. I can't do it, so you do it. If there were a conspiratorial relationship, and I'm not saying there is, my question is, if that did not qualify as aiding and abetting, but did qualify as a that's not covered by rule 64, 65. No, I would agree that if we agreed with Mary Jo, so with McBride or Polkowski, that we would do enter the buffer zone for them, I think that would be aiding and abetting. But there's no evidence of that alleged in the complaint. Yes, so when we talk about active participation, I know that sometimes in the cases that it's been explained in terms of is, or whether active concert and participation is a separate concept that we would need to think about independently. I don't, I think active concert. Yes, sir, go ahead. Yes. I mean, think, think about what it means. It says it's a working with someone else. Concert means I'm working with somebody or participating with them to accomplish something. And, and as Judge Hanks said, it's to accomplish the party getting around the injunction. If you're working with somebody and you're not acting to help them get around the injunction, you're not aiding and abetting. And, and you're, and in this case, that means we're exercising our own independent rights. And there's no evidence in the complaint. Sometimes when we, when we think about aiding and abetting, you might, somebody might be an aider and abetter because they know about the overall scheme and they just participate in one small piece of it. And so we might think that, that they were, they were aiding and abetting and might have criminal liability. But in this case, if someone like Mary Jo's gives someone, gives, you know, somebody on their way to do a protest access to the bathroom or something like we have on this record, does that count as active concert and participation? Because we might think of it as some level of aiding and abetting. Right. I, I, I would suggest that it does not because it really has nothing to do with, with, with the motivation, not the motivation, but the intent of, of, of Haven's and his group to exercise the rights that direct, you know, our, our basic theory is they started independently and without being, I guess, I guess, I guess my thought is to do so. And the only evidence that I'm sure. If Mary Jo's knows that Mr. Havens and his group are going to go do sidewalk counseling and they're going to do it in the buffer zone, which she thinks they're allowed to do. And she thinks that's great and lets them use the bathroom on the way to go do that, or while they're doing it or, or whatever it is. Would that place them in active concert and participation? No, because it doesn't have any effect on what they're doing independently. It doesn't turn them over. They have to be doing it on behalf of Mary Jo's or to assist. Not that Mary Jo simply knows they're going to do it and provide some supports. Right. She may very much enjoy it, but notice she's not doing it, but she likes them doing it, but if they're doing it independently, they can do it. That's what the first amendment is. The Claiborne hardware case, you know, it supports that concept. Let me, this is just low VA. So let me just point you to paragraph 43 of your complaint, which is the series of statements or bits of information provided by a news reporter. A Facebook post promoting training by Jim Havens and sidewalk advocates, a Facebook post by Havens promoting a training, a mailing from Rescue Rochester, urging its members to join Jim Havens and so on. Why, why do those not constitute what 65D describes, which is active concert? Because they don't, because they don't cancel Haven's own independent action. In other words, he's acting for himself and not for them. No, no, no. But if he acts for himself and for them. No, you can't do both. Except my hypothetical. You can't do both. So if I do something for me and for you, I can't do both of those things. Well, right. Because if I do something independently, the difference between not doing it independently is I wouldn't be doing it. If I'm doing it for Jost, I wouldn't be doing it independently. Okay. I think we've got the benefit of the argument. You've reserved one minute for rebuttal. We'll hear from counsel for the appellee. First, Mr. Brockman. Hi, good morning. May it please the court, Dustin Brockman on behalf of Attorney General James. I'd like to start with Judge Menashe's question about criminal law, the definition of aiding and abetting. And I just want to be clear, this court has never held that the criminal law definition of aiding and abetting defines the scope of active concert under Rule 65. True, that criminal law concept applies to determine whether or not a non-party committed criminal contempt, and that makes sense. Criminal contempt is designed to punish. That's not the issue here. And Rule 65, by contrast, is meant to enable courts to effectuate their orders and ensure compliance with their terms. Thus, this court has repeatedly held that aiding and abetting for purposes of active concert is an objective inquiry. You look at what the non-party did, not why they did it. Or as the court put it in Eli Lilly, what matters is the manner in which the conduct is pursued, not its purpose. And under that standard, it is clear from the base of the complaint that Havens has engaged in a course of conduct of aiding and abetting the named party to violate the injunction. Yeah, but of course you could recognize, as opposing counsel just said, that the nature of what you do might be to act on someone's behalf. And the motivation for doing it would be maybe you take pity on them, maybe you agree with their goals, maybe you're bribed to do it. There could be lots of motivations for it, but couldn't it be that the nature of the thing is, as he said, that you have to do it to assist the party that is enjoined? Well, yes, Your Honor. And it's clear that that assistance to violate the injunction has been provided. Okay, so just before we get to that, so you agree that in order for the injunction to apply to Mr. Havens, he has to be doing something to assist the named parties to violate the injunction? Well, two points. First, that has been shown and that is sufficient. I think second, as indicated in our brief, we also have a legal identification with the named parties. I think that's a separate theory of active concert distinct from aiding and abetting. But I'd like to return to sort of the aiding and abetting and what precisely the assistance that Havens provided. First, Mary Joss, who's a named party in the injunction, hosted training sessions where Havens taught others to sidewalk counsel. Well, hang on. This is Judge Giardini, and this is a very interesting point. I'd like to press you on this, if I could, on a couple details. Sure. Number one, you just said Mary Joss hosted it, right? And it seems like there's a legitimate argument, is there not, that there's a difference between what was alleged in the indictment and what was produced in evidence for purposes of the preliminary injunction, right? I mean, the focus hosted it and that she, quote, participates in it. So the notion that she hosted it is quite a strong version, and that's an inference that would be drawn in your favor, right? But one could easily draw an inference if one looks only at the four corners of the complaint that, I don't know who Mary Joss, she's someone who participates in focus, may or may not have had any involvement in the counseling, right? So let's just stop there. How do you get that at this point, there's no dispute that Joss hosted the sidewalk counseling training sessions at our organization. In addition to paragraph 48, there's, and the judicially noticeable fact that Joss is the founder and operates- So you're saying that even though it's not in the complaint, you believe that it's not disputed and therefore also not disputed that it can be considered for purposes of 12B6? My response is twofold. I think it's the purposes of the complaint, you look at the complaint allegations and judicially noticeable facts, as well as- Yeah, so let's go with that. How do we judicially notice Facebook posts? Is that something that the court generally relies, like Facebook is generally considered something that's reliable? Well, I think on page 95 of the record, it's actually the focus of the organization's website, and it lists Mary Joss as the founder. Can you cite me a case where we generally rely on people's own Facebook posts as something for which we can take judicial notice? I'm not familiar with the case law, but maybe you could point me to that. Well, it's not specific to Facebook, but on page nine of our brief, footnote one, we cite a case where the judicial notice is taken of a website, and that's the website that's not a party. But just to be clear, on page 19 of their reply brief, they refer to, in hosting sidewalk counseling training sessions at Focus, Joss did not aid plaintiffs to enter the buffer zone. Their dispute is not that Joss hosted it, and their dispute is not that at all, they just dispute the legal consequences of that act. And also, I think there's also Mary Joss' own blog post, and this is in the record at page 103, where she says, Jim Havens asked me if he could use Focus to host a sidewalk training session. I said yes. So I think right now, given the complaint allegations, given the judicially noticeable facts, both online and in the record, and then coupled with plaintiffs' own admissions or statements in their reply brief, I think it's beyond, it's no longer in dispute whether or not Joss hosted it, it's just the legal consequences of that. Can I ask you a question about the legal consequences of that? So recently, we've seen a lot of protests about police use of force and racial disparities. And there are many peaceful protesters, but also some incidents of violence. So let's say, hypothetically, there's somebody who participated in such a protest, who because of violence or a threat of violence, there's an injunction that that person can't approach a particular target of a protest, whether it's a person or a location or something. Now, are you telling me that if, going forward, the protesters continue to associate with that person in some fashion, he like, they have meetings at his apartment, or, or he lets them use the restroom on the way to a protest, or maybe he even shows up at a future protest, and they're protesting shoulder to shoulder with that guy who was subject to the injunction, that that would be a basis for saying that the whole protest was illegal, because there was somebody associated with the group who was enjoined from going to that location to protest? No, Your Honor, I think several responses. First would be would depend on on what the the injunction prohibits. And because aiding and abetting requires the party to violate the injunction, named party to violate the injunction. So what, for purposes of aiding and abetting, you need to, there should be, you know, there needs to be a violation. Let's say it's the same injunction that we have here. So he can't encourage other people to do it. So let's say he hosts a meeting at his apartment before the protesters go on to do their protest, or he can't go within 15 feet of the target of the protest. So let's say he actually violates the protest by showing up and other people are protesting shoulder to shoulder with him, just like the fact here, you're saying that because of that enjoined person's participation and association with the peaceful protesters, it renders the whole protest unlawful. Respectfully, no, no, Your Honor, I think, you know, first, let's turn to the example of hosting a meeting or, or training session, where we're what is being hosted as a training session on, engaging in conduct that will require entering the buffer zone, you know, that's not just hosting any meeting and, and talking to non-parties, that's sort of enabling a training session on how to engage in conduct. So would it make a difference if he hosted the meeting, if he did so, expecting the protesters at that meeting to go within the buffer zone, or he I mean, he's just not planning on going in the buffer zone, but and these other people, I assume, are entitled to. So why would it? So first of all, tell me if it makes a difference about his knowledge, and then why? Well, the party doesn't have to necessarily know they're violating the injunction. You know, this court has held inadvertent violations count. And that's because for purposes of civil contempt. And that's because the purpose of civil contempt is to know whether hosting the meeting is, is active concert and participation. And you're telling me, or aiding and abetting, and you're telling me that it would be because the nature of the thing is to violate the injunction. But of course, the nature of protesting is not necessarily to go within 15 feet in a buffer zone. But even if it were, if the person were just supporting people who were allowed to do that, by hosting a meeting or a planning session in advance, does that really render all the conduct of the peaceful protesters unlawful? No, Your Honor. And so first, it does not. And it does render what the party is doing, hosting the training session, that does run, you know, that that is providing aid in violation of the injunction. And second, you know, the person leading those training sessions, you know, here, Havens, and the person leading the demonstrations, where then people enter the buffer zone, that is sort of that is aiding and abetting the underlying violation. Because Havens was the leader, he was the one directing, teaching people, you know, here's how you engage in close contact, close contact with patients, you know, here, you know, either just be close personal conversation with them as they're entering the clinic, and he never told them to watch out for the buffer zone. Well, that's only unlawful, that's only unlawful, if they're doing it on behalf of the enjoined person, right? As you said a moment ago. So if they're doing it, because they want to do it anyway. How is it a violation of the injunction for the peaceful protesters who are not enjoined? I get your point. You think that the enjoined person, by hosting an organizational meeting for future, you know, police racial justice protest, that that person can't help the peaceful protesters in any way. I'm not sure that that's right. But I get that argument. But then you're saying even the peaceful protesters, if they plan to go within 15 feet, because they went to a meeting at an enjoined person's house, their protest is unlawful. A few points on first, you know, to be clear, non parties, to be bound need to know of the injunction, they need to be on notice of its terms, you know, here, that's undisputed. Haven was given the injunction, and he read it. So let's say everybody who attends the meeting knows that this person hosting the meeting can't himself go within 15 feet, but they all plan to, because that's what they want to do, because they're peaceful protesters, and they're allowed to do it. Right. And again, you're saying because they know that they went to a meeting at somebody's house to organize, and the person who owns the house is subject to an injunction. They and they're on, they know about the injunction that they therefore cannot approach within 15 feet of the target of the protest, just like that enjoined person. What they cannot do is assist the name party in violating the injunction. And in that case, that would mean accepting their aid and accepting the aid of the party and support of the party to go out and engage in conduct. It assists the party in violating the injunction, if you simply accept their aid. So you're telling me that in my scenario, if there's somebody who engages in one of the racial justice protests, who then engages in violence and is subject to an injunction, that person must completely dissociate from everybody involved in the protest and not provide them any aid or support. Otherwise, it would render all the protests unlawful. I don't think that kind of holding that this case sort of goes as far as that. I think it's clear that at the very least, the person conducting, you know, the party's hosting this training session, and then a non-party is teaching people what specifically to do at those demonstrations. And that is engaging conduct that, you know, requires walking up to the buffer zone while you enter in the buffer zone because you're supposed to be in close, intimate conversation with a person. And I think for purposes of that, Havens was integral and essential to justice violation of the injunction. And, you know, here, you know, I think that the assistance is substantial. Sorry. Mr. Bachner, so you, you know, you've been answering these questions, but I wonder if you might not be able to answer the following, I think, straightforward question, which is when the rule, I'm very focused on the words of the rule, which are the words I think that we're bound by in order to consider, when the rule uses the term active concept, what is the term active? What, what, what does that supply as opposed to just concept? I think it's applies active in the sense of, of, of affirmative conduct that, that, that the, the non-party needs to be doing, being, doing something to, to, to assist. Affirmative, well it's concert or participation, right? So these words must mean different things. And I wondered if you might help us determine what the, what, what concert versus participation means and does active also modify participation? I, I believe it, I believe it does. I also, I also believe that the, the case law sort of defining that term says, you know, at a minimum assisting, if a non-party assists a party to violate the injunction that, that constitutes active concert or participation. And, and to the extent it, it goes further, you know, it could, it will also include, you know, legal, legal identification as well. So those are the two, those are two minimums of, of what it entails. Judge, do you have any further questions? Yeah, I just, so just to clarify one thing. So just the basis of the district court's decision here, at some points, the district court seemed to suggest that Mr. Havens and his group were subject to the injunction because they shared the same views as the people subject to the injunction. He says at one point in the, in, from the bench, he says he has the same message that they did and therefore should be bound by the same restrictions. There's a point in his opinion where he says they share the same common goal of deterring abortion-minded women from seeking services at Planned Parenthood. You agree that just because somebody has the same viewpoint as someone subject to the injunction, they can't therefore be bound by the injunction, right? There needs to be some kind of conduct in which they engage that makes them, that renders them assisting the people subject to the injunction, right? Absolutely, absolutely, Your Honor. This is, this is about conduct and, you know, that goes, this is an objective inquiry. This is about what you did and not necessarily, or not at all why you did it. And just one, one point, I believe it was mentioned that, that to show active concert, it has to be on behalf of, of the name, name parties. I don't think that that's right. I think it's important to look at Rule 65 and, you know, it covers parties, officers, and agents, and anyone who's in active concert to be on behalf of, you know, that's someone who's an agent and active concert sort of sweeps more broadly and there does not need to be an agency. There doesn't need to be conduct that's on behalf of a party or for a party. It's, it's just, again, what you did, not why you did it. You did say in response to my question earlier, you said that they have to be assisting the party. That, that's correct. All right. So, so there is, you think that might be a level below doing something on behalf of someone assisting them, but you think at a minimum there needs to be a showing that the non-party is assisting the party. For purpose of aiding and abetting theory of active concert participation, yes. But that's because Mr. Brockner, as I understand it, on behalf, suggests motivation. That's, I just wanted to be clear that, yes, it could be right now or could even be interpreted to mean sort of an agency relationship, but that's 65 DQB and that's not an issue here. I think, I think you and Mr. Holt agree that motivation is irrelevant here. That's, that's correct. Okay. Can I ask one more thing? This is Judge Nardini. Of course. A lot of your argument seems to be premised on the training at focus, but would you agree that hypothetically if the training consisted of the following, everyone go hold up placards and stand behind the yellow line, don't cross the yellow line, that would not support a suggestion of whatever, under what, even under your theory of active concert, that would not support a theory that there had somehow been an aiding and abetting or active concert to violate the injunction, right? If that were, assume, take my hypothetical, that the training consisted of nobody cross the yellow line. If Joss knew that and Joss was not, you know, aiding anyone to engage in conduct that would violate the injunction, the aiding and abetting theory would not apply. So can you, can you point to what there is in the injunct, I'm sorry, in the complaint for purposes of 12B6 or in the more expanded record for purposes of the preliminary injunction that demonstrates what the content of this training was? Absolutely, your honor. If you look at paragraph 37, sidewalk counseling entails having, and this is according to the complaint, entails having a close intimate conversation with a patient as they're walking up to the clinic. What page is that? I'm sorry, say it again. Paragraph? This is paragraph 37, page 11. I'm not, I'm not seeing that. It sees, I see that they're unable because of the buffer zone to have an intimate conversation, but where does it say that sidewalk counseling does involve having an intimate conversation? That seems different. Because you can't. Right, right. The training that was actually conducted did advise someone to do the thing that the injunction forbids. That's what I'm looking for. Right, right, right. Just, that's what I think. I'd like to clarify my answer that it's to engage in sidewalk counseling effectively. The complaint alleges having to converse from 15 feet away, you know, being outside the buffer zone while the person's buffer zone is counterproductive to their ability to communicate effectively. And also paragraph 37 says you can describe the buffer zone as very burdensome. How do you interpret then, I assume, let's say we take judicial notice of the Facebook post, which seems questionable to me. All it says in paragraph 43 is that there was a Facebook post promoting training. Period, right? It doesn't say promoting training for sidewalk counseling. It doesn't say promoting sidewalk counseling that infringes on the buffer zone. I guess, so I guess I'm wondering again if, let's just take 12b6, if we're to draw every inference in favor of the complaint, seems to me you're asking us to draw an inference that is contrary or negative vis-a-vis the plaintiff. Why should we start imagining what this training consists of? Right. I think... Aren't we just making stuff up? No, your honor. I think also if you look at the page before on the complaint, just understand what Havens at the time he conducted the trainings, this is, he did not think the injunction could apply to anyone besides those named in the injunction. And I think it's, the only reasonable interpretation is that when he conducted a training session, he would teach people how to engage in sidewalk counseling. Can I just clarify that? So you agree that the injunction only applies to people made in the injunction who are not an, at least insofar as they're not an active constituent participation. So when Mr. Havens moved to Rochester and before he met Mary Joost or any of the enjoined parties, he was allowed to go into the buffer zone, right? You're just saying once he stopped having trainings at his home and started having trainings at a facility that Mary Joost is involved in, then that suddenly he was no longer able, right? Is that, that's... And to add to that, that this was also with notice of the injunction. So I think it's important... So if he had had this exact same training, but no one ever mentioned to him the existence of the injunction, he still would be able to violate the injunction. But once he is having meetings at Mary Joost's facility and somebody has mentioned to him the injunction, that is when he can no longer do the sidewalk counseling in front of the Planned Parenthood. Not necessarily, Your Honor. I think it's sort of actual notice of the injunction, I think at the very least, or, you know, here there's direct receipt. He received it. He read its terms. So I don't take a position on, you know, what constitutes actual notice. But the whole question is whether it applies to him. Why does it matter if he has notice of it? I mean, if he were one of the parties to the original injunction, but for some reason never learned about it, you'd still say it applies to him, right? Isn't what we're trying to figure out whether the injunction actually applies to him? Why is the notice a key thing? I'm only specifying because Rule 65D2 says, refers to, binds, an injunction binds the following who receive actual notice of it. And we have required actual notice. Is that correct? That's correct. As, you know, because the rule does. That's why I just wanted to make clear. And I think that's an important point, the actual notice. So assuming that he has notice of it, if he had just avoided going to Mary Jost's facility for training, and he had done the trainings at a different location, there would not be a case here. He could still go within the buffer zone. I think it would be a different case, but I also want to point out that this injunction, excuse me, the complaint also talks about Jost in another named party, Rescue Rochester, publicizing and promoting plaintiff's demonstrations outside the clinic, demonstrations where plaintiffs and members of the association would engage in, excuse me, sidewalk counseling without respecting the buffers there. But if an enjoined party takes a unilateral action to support somebody who's doing something in violation of the injunction, if he doesn't have control over that, does that transform him to being an active conservative participation? So in my hypothetical, if the enjoined person doesn't hold the meetings with the peaceful protesters, but all he does is do a lot of posts on social media that say, I really support these guys and what they're doing, would that render the protest unlawful? Right. And I think it's not necessarily the protest, but it's about the specific conduct. And just to be clear, Havens can demonstrate outside the clinic, and it's not like he cannot continue to engage in that activity. It's just that he can't enter the buffer zone. And I think if a non-party knows of the facts, that means if he's on, if the non-party's on notice that he or she is assisting conduct that constitutes a violation, then yes. If Jost is, then yes, that would be enough. This is Judge Giardini. Can I ask you, I think you did not address this case, the Levin case in your brief, and I was hoping you might, which I think stands for the proposition that a non-party does not violate an injunction by accepting assistance from a party who is bound by the injunction, even if the party is violating the injunction. And there, there were transfers of assets that the party subject to the injunction was not allowed to ship away, but did. And the non-party, who I think was this Andra, who was a former subsidiary, I think, received the money. So in other words, receiving assistance from somebody, even if the party bound by the injunction was violating the injunction. In other words, having someone aid in the violation of the injunction does not mean that the person receiving that assistance, thereby becomes the aider in the better and the aider of the aider in the better, and therefore transforms himself into someone who's effectively a principal. Just tell me how Levin doesn't work, doesn't apply to your case. Yes. I think, again, it's about the terms of the injunction. I don't know what the terms of the injunction in Levin were, but here, the term at issue is the substantive violation is that a named party cannot assist others to do what, to enter the buffer zone. And I think if you look at Levin, it defines sort of what aiding and abetting for purposes of civil contempt includes. And it says the party subject to the mandate committed contempt, and another party assisted the enjoined party to commit that contempt. So first, there's a substantive violation of the injunction. And second, there's the non-party assisted that violation. And here, I think it's worth noting that Havens, he was accepting Jost's aid and he was the one conducting, Jost hosted it. She provided the means that he was the one. He wasn't just a passive participant. He was the one telling people how to engage in effective sidewall counseling. So this is going the other way, is what you're saying. In other words, the person, the plaintiff was participating in concert with and trying to help, for whatever reason, those who were subject to the injunction. That's correct. Thank you. We've kept you well past your time, Mr. Brochner. We'll hear from Mr. Ash. Thank you, Your Honors. Good morning, Your Honors. May it please the court, Spencer Ash for Respondent, City of Rochester. I just want to address a little bit of the context of Judge Larimer's decision and order. Judge Larimer recognized, I think what was obvious to Judge Arcara and the court in VACO v. Operation National, which is a Second Circuit case, where all the courts, all the judges have recognized that groups of individuals in the anti-abortion movement move very fluidly between different associations with the same basic goals and leadership. This is what we're dealing with now. We have a recognized group of individuals who are not anti-abortion groups. They are leaders. I'm sorry. So then what you're saying is that because the groups are fluid, the injunction applies to anybody who's part of the pro-life community? I think when, yes, I think the injunction, which has been upheld by this court, was openly... So you disagree with what the AG's attorney just said, which is that you can't actually enjoin somebody because they share a common goal with the enjoined parties. You say that you can't because the individuals are fluid. Well, no. What I'm saying is that the court recognized that it's hard to get the kind of agreement, evidence of conspiracy, sort of overact because of the very nature of this anti-abortion syndicate, for lack of a better term. But Mr. Ash, I'm looking at this complaint and I thought that the argument was that in the complaint itself, there are allegations for whatever reason that show forms of not only communication, but active participation between the Havens group and those parties that are involved. Well, I don't need to go further than that, Your Honor, but I don't want to divorce the facts that we've pointed to in the city's brief from the context here. These are not random individuals. These are individuals who know each other. They have common goals. Mr. Ash, in the Spitzer versus Operation Rescue National, when we upheld the ACARA injunction in part, we said that with respect to Michael Warren, there wasn't enough evidence that he had engaged in unlawful conduct and therefore the injunction could not lawfully be applied to him. But obviously, he was in association with everybody else who was subject to the injunction. So haven't we rejected the idea that you can just apply the injunction in a fluid fashion to anybody who sort of works together for pro-life goals or in these pro-life organizations? Don't we require specific findings that can be subject to an injunction? It has to be that you engaged in unlawful conduct. Your Honor, I'm not arguing that the conduct can be fluid. That's not what I'm saying. I'm saying that the backdrop of Judge Larimer's decision is that there's a very sort of fluid nature to the organizations that are subject to this injunction. And here's what I mean. There's a tactic here that's being employed by Mr. Havens, which is this in-your-face, very aggressive approaching of women trying to get care. That is the conduct that the ACARA injunction is directed to. If Mr. Havens, who is on the sidewalk, shoulder to shoulder, doing this type of activity with people who are named in the injunction, who are getting support and training facilities from people named in the injunction, and who's being marketed and advertised by people named in the injunction, if that doesn't qualify as providing the kind of support and encouragement, then nothing does. Can I just go back to the question I had asked of the Attorney General? So as I said, we've had these protests about police use of force and racial disparities, and there have been some incidents of violence, but other peaceful protesters. And I think in response to my question, the AG's counsel said, if a person subject to the injunction was still promoting and providing that kind of support through social media and so on, the peaceful protesters who were engaging in the conduct from which he was enjoined, it would render the protest unlawful. Do you agree with that? Well, because the end result of the peaceful protesters would not be to violate an injunction. The conduct itself is... Oh, no, no, no. In my hypothetical, it would be. So I'm just saying that I think we all agree that there have been peaceful protesters, but also incidents of violence. And so I'm saying, well, let's say somebody who had engaged in violence or threatened violence was subject to an injunction. And then that person just continued to associate with the peaceful protesters who are still protesting, even though he himself is not specifically violating an injunction, but he encourages the peaceful protesters to do the stuff, to do the protest activity that he himself can't do. You're telling me that if he provides support to the peaceful protesters, and then they go forth and engage in the conduct from which he's enjoined, that would render the protest unlawful? Well, I'm a little bit confused by the questioning, Your Honor, just because you keep saying peaceful protesters. Here, what Havens has declared he wants to do is the very opposite of a peaceful protest. He says he wants to get... Oh, I see. So what you're saying is that sidewalk counseling is just inherently not peaceful, and therefore it can be enjoined. Is that what you're saying? No, I'm saying that there is a buffer zone specifically because of the distinct facts that created the injunction that we're talking about now. So you're saying the buffer zone can apply to anybody who wants to engage in sidewalk counseling? Anyone whose conduct, in actuality, supports the kind of invasive, harassing conduct that the injunction enjoins will fall under the umbrella of this injunction. Has there ever been an adjudication about Mr. Havens? Sorry, my phone is breaking up, so maybe I didn't hear you right away. It's okay, it's perfectly fine. I just want to make sure that I understand Mr. Asch's response. It's so long, of course, as those people are on actual notice of the injunction. Better yet, they receive a copy of the injunction, right? I would argue that that is a particularly damning fact that would obviously help my argument, but I don't find much case law that goes beyond the court making analysis of an injunction, looking at what the actual result of the conduct was. Knowledge is important for contempt proceedings, but the injunction has to be effective. The breadth and scope of the injunction has to fit its ends and its purpose. Okay, so I get that. That's the kind of point I was trying to make before, which is that this is not a contempt proceeding that is about whether the injunction applies to Mr. Havens. I understand that, but it seems like you're saying that, and this is different from what the Attorney General was saying, you're saying that anybody who wants to engage in sidewalk counseling, even if they didn't know the parties who were subject to the Arcara injunction, they would be subject to it because they want to engage in the conduct that Judge Arcara found offensive and wanted to enjoin. Is that right? So if Mr. Havens never met Mary Jost, he would still be subject to the injunction. Well, I don't want to go down that road because I think the fact- I think that's what you just said. I think what you just said is anybody who is engaging in sidewalk counseling, which is offensive and harassing and so on, has to know that their conduct is being enjoined. Yeah, but it's not in a vacuum. The court would look at a body of facts to support that finding. But one of the critical factors that the court would look to, what is the actual result of the conduct, the participation, the encouragement? And in Roe v. Operation Rescue, the court said encouragement may suffice to support a finding of contempt. So here, the question is whether or not this injunction, which has been upheld, even applies to him. We're not in a contempt proceeding posture. Whether it even applies to him, what the court wanted to do was prevent a tactic that is harassing and abusing- Wait, wait, wait. I'm sorry. I'm sorry. So you're saying that the Arcara injunction is designed to prevent sidewalk counseling full stop, no matter who's doing it? No, no, no. No, no. Sidewalk counseling that invades- The defendants are subject to this, too. It's defendant-specific and those who aid in a bet and those they aid in a bet. So that's the universe of individuals. But the conduct is also a target. The conduct that goes up to an individual, whether in a parking lot or in their face, in the threshold of a clinic, and in a very harassing and aggressive manner, that conduct, which is, by the way, not only a statute. Yes, yes, yes, your honor. This is Judge Lohier. Look, I think we're getting a little confused here, but I take it that what you're saying is that that conduct is the subject of a judicial decree, namely the injunction, right? Absolutely. And so the only question before us is whether the conduct alleged in the complaint, along with, I take it, these attachments and exhibits, is the form of conduct, given actual notice of the injunction, that constitutes active concert or participation under Rule 65. That's the very narrow focus of our inquiry. Is that correct? I think so, your honor. And I will just add that I think it's important. Well, if that's the narrow focus of our inquiry, why would you add anything? Well, I didn't add much, your honor. I just think it's important that if you would just, you could just narrow in on the conduct that I think is the focus of the permanent injunction. But I think the fact that these individuals are part of the same universe of principles, the same network, and that they work very closely to each other is a relevant fact. Thank you. Thank you very much. Mr. Olt, you have one minute for rebuttal. Yes, thank you very much. I think that the city's argument shows very clearly why it would be a great mistake to affirm the lower court's decision. The city wants to create a speech-free zone for all pro-life speech, and the First Amendment prohibits this. By the way, he says that we approach women, you know, in a harassing way. Well, where is that in the complaint? You know, there's absolutely no substantiation for that. It's quite the opposite. Mr. Olt, would you just agree that the focus really is on the nature of the, well, in the connection with the judicial decree, Rule 65, that is whether the allegations in the along with all of the various attachments, as I understand it, are enough to show some form of active concert or participation? Would you agree with that? Yes, I agree with that. I would simply add that it's an important decision. Well, that's what it should be. I'm sorry. That's what it should be, right? Would you agree that the district judge did seem to be saying that because Mr. Havens and his group have the same goals and the same message as the people who are subject to the injunction, they therefore should be bound by the injunction? That's exactly what he said, and the result is, you know, let the state off easy. They can just have a free speech zone here. All pro-life speech get away from us, and it's a total violation of due process and First Amendment. And he's deciding it with prejudice and a complaint without any factual development. How is that fair? Was that in the opinion? Yes. Okay. And this is Judge Nardini. The relief that you seek, I understand, is twofold. Number one, you want to you would want us to reverse the dismissal under Rule 12B-6, right? That's the first thing? Correct. And is the second thing you would want is just put it in your own words in terms of the preliminary injunction? Sure. The preliminary. It's been two years now since September of 2018. Now we're in September of 2020, where the city, by the way, at that time said, you're okay, Jim. I'm sorry. This is Judge Nardini. I know our time is limited. Could you just describe what the creedal language would be that you would in your wildest dreams? What would you hope for? I would ask the court to enter a preliminary injunction, allowing Jim Havens and his group to settle counsel in the buffer zone. He's required to apply, you know, conform to all substantive law, just not that buffer zone. Okay. All right. Thank you very much. The case is submitted and we'll reserve the decision.